IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH FRIEL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>TRUSTPOINT INSURANCE CORPORATION<br><br>and<br><br>AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS<br><br>Defendants. | Case No. |

**CLASS ACTION COMPLAINT**

**PRELIMINARY STATEMENT**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone

records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiff Joseph Friel ("Plaintiff") brings this action under the TCPA alleging that TrustPoint Insurance Corporation ("Defendant TrustPoint" or "TrustPoint"), made pre-recorded telephone calls to him, at the direction of and selling the products of American-Amicable Life Insurance Company of Texas ("Defendant American-Amicable" or "American-Amicable"). Like Plaintiff, recipients of these calls were listed on the National Do Not Call Registry and did not provide the requisite consent to be contacted by Defendants.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

8. Plaintiff Joseph Friel is a resident in this District.

9. Defendant TrustPoint is headquartered in St. Lucie County, Florida.

10. Defendant American-Amicable is headquartered in McLennan County, Texas.

**JURISDICTION AND VENUE**

11. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

12. This Court has specific personal jurisdiction over both Defendants because they sent calls into this District or authorized the same.

3

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to the Plaintiff were sent into this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>Calls Made Using a Pre-Recorded Message</u>

15. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

17. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

18. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone

4

dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

19. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

21. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**FACTUAL ALLEGATIONS**

22. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23. Defendant American-Amicable sells insurance products and uses pre-recorded telemarketing calls to promote its plans to consumers.

24. American-Amicable hires third-party companies like Defendant TrustPoint to make calls on its behalf in order to generate leads.

5

25. Plaintiff's telephone number, (610) XXX-XXX, is a non-commercial telephone number not associated with any business.

26. That telephone number is assigned to a cellular telephone service.

27. Plaintiff's telephone number is used for personal residential purposes.

28. Plaintiff's telephone number has been listed on the National Do Not Call Registry since 2011.

29. Plaintiff had never been a customer of any of the Defendants nor asked or inquired to be a customer of the Defendants.

30. Plaintiff never consented to receive calls from Defendants.

31. Plaintiff never did business with Defendants.

32. Despite that, Plaintiff received at least eleven telemarketing calls to his cellular telephone number from the Defendants in June 2025.

33. Defendant TrustPoint, at Defendant American-Amicable's direction, placed calls to Plaintiff from "spoofed" telephone numbers.

34. The calls were made to Plaintiff from June 2 to June 16, 2025.

35. During the final call on June 16, Defendant American-Amicable sold Plaintiff an insurance policy that Plaintiff subsequently cancelled.

36. Many of the calls began with a prerecorded message using an avatar voice response.

37. The calls were clearly prerecorded because they all sounded similar to one another.

38. When Plaintiff made a spoke or asked a question in response to the caller, the recorded caller was often non-responsive to Plaintiff's statement.

39. For example, during several of the calls Plaintiff answered from Defendants, the caller stated "How are you doing today?"

40. Plaintiff responded, "I'm fine, how are you?"

41. After a delay in response by the caller, the caller stated, "*Okay, sounds good*, the purpose of my call is to inform you that the state recently approved a new final expense whole life insurance…"

42. After the Plaintiff went through the prompts with the pre-recorded message, he was transferred to a live agent from American-Amicable.

43. Indeed, it appeared that American-Amicable made the calls until American-Amicable identified TrustPoint as responsible for the calls.

44. The aforementioned calls were placed using a prerecorded voice because: a) the robot played the identical or similar kinds of messages during some of the calls; b) the robot's speech and responses were off; c) the robot had a generic and monotone voice; and d) Plaintiff was eventually transferred to an individual during the call which were unquestionably human, especially by comparison to the robotic voice.

45. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

46. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

47. The FCC has instructed that sellers such as American-Amicable may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such as Trustpoint:

7

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

48. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

49. Defendant American-Amicable hired TrustPoint to make the pre-recorded telemarketing calls they sent.

50. Defendant American-Amicable also provided TrustPoint access to their system to allow them to directly transfer the pre-recorded calls.

51. Defendant American-Amicable provided criteria in terms of specific geographic locations and requirements for their potential customers for TrustPoint to make the calls to.

52. Defendant American-Amicable is liable for Defendant TrustPoint's conduct and telemarketing calls placed by TrustPoint.

53. The calls were transferred by TrustPoint to American-Amicable to generate customers for American-Amicable and its agents, including the Plaintiff.

54. TrustPoint was clearly hired by American-Amicable as a generator to make phone calls to potential customers, vet potential clients, and sell them the interested ones.

55. American-Amicable hired TrustPoint to orchestrate an *en masse* telemarketing campaign.

56. The aforementioned calls to the Plaintiff were unwanted.

57. The calls were nonconsensual encounters.

58. The calls were made in an attempt to sell insurance plans.

59. Plaintiff's privacy has been violated by the above-described telemarketing calls

60. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION STATEMENT

61. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

62. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

63. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Trustpoint Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Trustpoint, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

9

> **American-Amicable Robocall Sub-Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) TrustPoint, or a third party on their behalf, placed a call using artificial or pre-record messages (3) that advertised, or were intended to advertise, American-Amicable services (3) within the four years prior to the filing of the Complaint.

> **TrustPoint National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from TrustPoint or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

> **American-Amicable National Do Not Call Registry Sub-Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from American-Amicable or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

64. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

65. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

66. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

67. This Class Action Complaint seeks injunctive relief and money damages.

68. The Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

69.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

70.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

71.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

72.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

73.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   a.     Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

   b.     Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

   c.     The corresponding degrees and liability as among and between Defendants;

   d.     Whether Defendants' conduct constitutes a violation of the TCPA; and

   e.     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

74.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

75.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

76.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

77.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

78.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff and the Robocall Class)**

79.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

80.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

81.     The Defendants' violations were negligent, willful, or knowing.

82.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

83. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

84. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

85. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

86. Defendants' violations were negligent, willful, or knowing.

87. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

88. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents,

13

and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.  Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.  Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C.  That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.  Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Plaintiff,
By Counsel,

*/s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich (*subject to pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com